UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Margaret Barbour, | ) | CASE NO. 1:24 CV 97 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Speedway, et al., | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Speedway LLC's Motion for Summary Judgment. (Doc. 16.) This is a personal injury case. For the reasons that follow, Defendant Speedway LLC's Motion for Summary Judgment is GRANTED.

**FACTS**

On January 8, 2022, plaintiff Margaret Barbour ("Barbour") visited a store operated by defendant Speedway LLC ("Speedway") in North Ridgeville, Ohio to purchase gas and cigarettes. As shown on surveillance video recorded in the Speedway store that day, Barbour approached the counter with the cash register and stood in front of the same. A counter-height, black display rack holding several colorful bags of chips stood between Barbour and the counter. After standing at the counter in front of the display rack for three and a half minutes, Barbour turned to leave and fell to the ground. The fall fractured her clavicle, which required surgery and still causes her pain.

Speedway contends that Barbour fell after getting her left foot caught on the left side of the display rack when she turned to leave. Barbour, on the other hand, contends that a "broken bracket of [the] display rack was sticking out too far, caught her shoe, and caused her to fall." (Doc. 19, at 2.) Barbour argues that Speedway knew about the broken bracket but failed to fix it or warn her against its dangers.

On January 5, 2024, Barbour filed a complaint against Speedway, alleging a single count of negligence.[1] Speedway now moves for summary judgment entered in its favor, which Barbour opposes.

**STANDARD OF REVIEW**

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine dispute of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [moving

---

[1] Barbour filed this action in the Lorain County Court of Common Pleas. On January 17, 2024, Speedway removed the action to this Court. (Doc. 1.)

2

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Id.* at 252.

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). In doing so, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

"Where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape." *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (citations and quotations omitted). If the video "does not tell the whole story in a material respect," or if reasonable jurors could make different conclusions about the video, summary judgment is inappropriate. *Id.* (quotation omitted).

**ANALYSIS**

To prevail on her negligence claim against Speedway, Barbour must establish that Speedway (1) owed her a duty of care; (2) breached that duty; and (3) the breach caused her injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St. 3d 75, 77 (1984). While the parties agree that Barbour was a business invitee at Speedway's store, they disagree about what caused Barbour to fall and, in turn, whether Speedway owed Barbour any legal duty. The Court will address each in turn.

### A. Cause of Barbour's Fall

Speedway contends that Barbour fell after getting her left foot caught on the left side of the display rack as she moved to leave. To support its motion, Speedway points to the surveillance video, which shows Barbour standing very close to the display rack while she waited at the counter. When she turned to leave, her right foot appears clear of the display rack, but her left foot is close to the left side of the display rack. The next frame shows Barbour fallen to the ground. The surveillance video is consistent with Speedway's contention that Barbour's left foot tripped over the left side of the display rack. Speedway also points to Barbour's own testimony that when she turned to walk away her "left foot got caught in [her] shoe on a rack and [she] just went down" (Doc. 16-1 (Barbour Deposition), at 11:4–5), which is consistent with the surveillance video.

Now, however, Barbour contends that a "broken bracket of [the] display rack was sticking out too far, caught her shoe, and caused her to fall." (Doc. 19, at 2.) But, fatally, Barbour fails to point to significant probative evidence that this is the case. First, Barbour never testified that a broken bracket caused her fall. Further, there is no evidence of any broken piece protruding into the open area around the left side of the display rack. Neither Barbour nor Barbour's daughter Carrie Shannon ("Shannon") testified that it was and none of the several photos taken after Barbour's fall show any broken piece

protruding from the left side of the display rack.[2] In fact, none of the video or photo evidence document any broken piece at all.

Barbour's reliance on evidence that the Speedway employee working the cash register ("Nathan") said he knew the display rack was broken is misplaced.[3] While these statements may suggest that Nathan considered some part of the display rack to be broken, there is still insignificant probative evidence that some broken bracket caused Barbour's fall.[4] *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

---

[2] Barbour does not challenge that the photos Speedway provided are true and accurate depictions of the display rack as it appeared on the day Barbour's injury occurred. The lack of any protruding piece of the display rack is consistent with Speedway's contention that Barbour's left foot tripped over the left side of the display rack. *Cf. Beach v. Wal-Mart Stores East, Inc.*, 2016 WL 7223392, at *4 (S.D. Ohio Dec. 13, 2016) ("In the case at hand, there were no pallets, no stock bases, no thin metal bars protruding into the aisle ways, etc.").

[3] Nathan did not testify at a deposition in this case. Barbour, however, testified that after she fell, Nathan told her that he "saw that rack was loose and [ ] should have fixed it earlier" (Doc. 19, at 2 (citing 16-1, at 11:21–25).) Shannon likewise averred in an affidavit that Nathan showed her where the display rack was broken and told her he should have fixed it earlier but did not. (Doc. 19-1 ¶¶ 5–6.) According to Shannon, "[o]ne of the bottom brackets that secured the display rack to the checkout counter had come loose and was sticking out from underneath the display rack more than usual." (*Id.* ¶ 5.) Barbour also claims that the surveillance video shows Nathan "crouching down" "onto his hands and knees" and "explaining to [ ] Barbour how the [bottom] bracket" "had come loose from the wall and was sticking out." (Doc. 19, at 3.)

[4] Barbour cites this testimony to suggests that a "bottom bracket" was sticking out "underneath the display rack" and "snagged" Barbour's shoe as she moved passed. The photos of the display rack show, however, that a thick, solid bar separates the area where Barbour stood next to the display rack and the area underneath the display rack. Barbour does not explain how a broken bracket underneath the display case snagged her shoe through this bar.

Barbour's evidence boils down to a single statement in Shannon's affidavit: that her mother "explained . . . that as she turned away from the checkout counter to leave, her shoe got caught on a bracket of the display rack that was sticking out from under the checkout counter, causing her to fall." (Doc. 19-1 ¶ 7.) This singular statement, however, is insufficient to create a genuine issue of material fact. Not only is it unsupported by any other evidence in the record, but it stands in contrast to Barbour's own testimony, which makes no reference to a broken bracket catching her shoe.[5] *Anderson*, 477 U.S. at 250, 252 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

For all the aforementioned reasons, the Court finds that the evidence, even when viewed in the light most favorable to Barbour, leads to only one reasonable conclusion—that Barbour fell because her left foot tripped over the left side of the display rack.

### B. Speedway's Duty to Warn Barbour

Having determined that the left side of the display rack caused Barbour's fall, the Court must determine whether Speedway had a duty to warn Barbour. Generally, a business owner "owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*,

---

[5] Barbour also cites to Shannon's affidavit for the proposition that "Nathan explained that it was [the broken bottom bracket that] snagged Ms. Barbour's shoe causing her to fall." (Doc. 19, at 6 (citing Doc. 19-1 ¶ 5).) Shannon's affidavit, however, makes no such statement. Further, it is uncontroverted that Nathan stood behind the counter without a clear view of what caused the accident.

788 N.E.2d 1088, 1089 (Ohio 2003) (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985)).

Storeowners, however, "'are not insurers against all accidents and injuries to [their] patrons while in the store.'" *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943) (quoting *S. S. Kresge Co. v. Fader*, 116 Ohio St. 718 (1927))). A business owner "owes no duty to warn business invitees of open and obvious dangers on the premises." *Smrtka v. Boote*, 88 N.E.3d 465, 470 (Ohio Ct. App. March 31, 2017) (citing *Paschal*, 480 N.E.2d at 475). "[T]he owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Armstrong*, 788 N.E.2d at 1089; *see also Beach*, 2016 WL 7223392, at *2 ("'Open and obvious' hazards are those that are so objectively apparent that they serve as their own warning, and business invitees are expected to 'discover them and protect [themselves] against them.'" (quoting *Sidle v. Humphrey*, 233 N.E.2d 589, 590 (Ohio 1968))).

"Open and obvious" means "observable." *Lydic v. Lowe's Cos., Inc.*, 2002 WL 31111820, at *2 (Ohio Ct. App. Sept. 24, 2002). Moreover, the hazard does not actually have to be observed by the business invitee to be "open and obvious." *Kintner v. Aldi, Inc.*, 494 F. Supp. 2d 811, 815 (S.D. Ohio. 2007). Rather, the test is an objective one that questions whether the alleged hazard is observable by a reasonable person. *Id.* As such, even in cases where a plaintiff did not actually see the hazard until after he or she fell, no duty exists where the plaintiff "could have seen the condition if he or she had looked." *Lydic*, 2002 WL 31111820, at *2.

Ohio law provides that a court may determine whether a hazard was open and obvious as a matter of law on summary judgment. *Alley v. Glassman*, Inc., 2011 WL 6933998, at *4 (Ohio Ct. App. Dec. 30, 2011) ("It is well-settled that certain clearly ascertainable hazards or defects may be

7

deemed open and obvious as a matter of law for purposes of granting summary judgment." (quotations omitted)). Courts may look to visual evidence such as videos in making these determinations. *Id.*; *see also Conrad v. Sears, Roebuck & Co.*, 2005 WL 758199, at *4 (Ohio Ct. App. Apr. 5, 2005) ("Reviewing the video, the photos, and the testimony, it is clear that appellant's view of the box on the floor was not blocked during all of the four minutes that she stood in the aisle.").

Here, the black, counter-height display rack was stocked with several bags of different colored chips and stood out against the light-colored counter and light-colored floor. As Barbour approached the counter, there was no person or thing obstructing her view of the display rack. Further, Barbour had reasonable opportunity to observe the display rack, which is of a type commonly used in similar store settings, during the nearly four minutes she stood in front of it before she fell. The display rack in question was clearly open and obvious. Tellingly, Barbour does not contend otherwise. Accordingly, Speedway had no duty to warn Barbour about the open and obvious display rack. *Armstrong*, 788 N.E.2d at 1090 ("[T]he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.").

For all the aforementioned reasons, Defendant Speedway LLC's Motion for Summary Judgment (Doc. 16) is granted, and summary judgment is entered in its favor.

**CONCLUSION**

For the foregoing reasons, Defendant Speedway LLC's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/20/24